THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS A. ORTIZ VÁZQUEZ, Defendant and Appellant.

No. CR-67-53.     Decided December 30, 1969.

·*Ángel Viera Martínez* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor· General,* and *Lolita Miranda, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant was convicted by a jury of. the offense of crime against nature and was sentenced to serve from 5 to 10 years in the penitentiary.

In this appeal he assigns the commission of eight errors. Before discussing them we will make a summary of the evidence.

The evidence for the prosecution sought to establish that on May 31, 1966, the minor J.R.M., 15 years old, was hospitalized in the Hospital Universitario, suffering from diabetes. On or about that date appellant rendered services in that hospital as resident doctor.

Around eleven o'clock at nighttime of said May 31, the minor J.R.M. went in pajamas to a bathroom to urinate. When he finished, appellant went inside that bathroom and offered the minor a dollar so that the latter would perform a certain

lascivious act with his mouth. The minor refused, and when the latter was trying to get out of the bathroom, appellant closed the door, grabbed him, threw him on the floor, and after opening the zipper of his pants and pulling down the minor's pajamas and while he was covering his mouth, realized a carnal act against nature, using the minor as a passive agent. Once he had finished, the minor left running and crying, according to his testimony, and while he was going to his bedroom he passed in front of nurse Ada Nelly Oquendo, sad and crestfallen, as this nurse testified. When she saw him in this attitude, which was not the boy's usual one, she asked him what was happening to him and he answered that nothing was the matter. This nurse asked Mrs. Carrillo, another nurse who was more in contact with the patient, to ask the boy what had happened to him, but Mrs. Carrillo was not successful either. On the following day she asked him again and then the boy told her what had happened with the doctor, appellant herein. Two days after the events the boy told the nurse, Mrs. Oquendo, what had happened to him and she in turn went to inform it to her superior.

Subsequently, three doctors questioned her and the boy and the latter related to them what had happened to him with appellant.

We will refer further on to the other details of the evidence for the prosecution when we shall discuss the errors assigned.

The defense used as sole witness, District Judge Ramón A. Fortis, who at the preliminary hearing determined probable cause to accuse appellant. His testimony was limited to establishing that during the preliminary hearing there was conflict as to a date, without remembering the date.

The court's refusal to order that the minor be submitted to a psychiatric examination, there being grounds for it in the record, is assigned as the first error.

From the record it appears that while the minor was testifying as witness for the prosecution he was reluctant to answer some questions, he took time in answering others and hesitated, so that suggestive questions had to be made to him, and sometimes the judge had to threaten the witness so that he would answer. The judge decided that the witness' attitude was not surprising due to the diabetic condition and the nature of the facts about which he was testifying. The reading of the transcript of his testimony does not establish ground to consider that the witness was mentally unsound. As part of the picture which the testimony of this witness represents, there is the nature and manner of the questions made by the defense, many of them very long and others confusing, to the point that sometimes the magistrate himself did not understand them.

■ The law assumes that the normal state is that of sanity. Neither from the witness' testimony nor from any other evidence there arose reasonable doubt about his sanity, and therefore, the magistrate did not err in refusing to order a psychiatric examination of the witness.

In the second assignment, the action of the presiding magistrate of the trial court, in informing the jury of a fact about which evidence had not been heard, is attacked.

■ While the prejudiced minor was cross-examined, one of defendant's counsel stated to the court, in the presence of the jury, that he believed that the witness should be examined to see whether at that moment he was in a state of shock. The court adjourned and in the absence of the jury the witness fainted in the witness stand. He was sent to a dispensary to receive medical attention. The doctor who took care of him informed the magistrate by telephone that the minor suffered from an attack of hysteria, and not of diabetes, and that he recommended that the witness should not continue testifying during that day and to allow him to rest until the next day when he would be in condition to do it.

When the sitting was resumed the magistrate transmitted to the jury that information as a reason to order an adjournment until the next day. In view of the fact that the prosecuting attorney and the defense preferred not to alter the order of the evidence and to wait until the witness could continue testifying, the court adjourned.

On the following day the defense requested the discharge of the jury on the ground that the information transmitted by the magistrate to said body impaired defendant's rights since, as he alleges, the information about the attack of hysteria suffered by the witness could be a reasonable explanation of his conduct while he testified and, therefore, benefit the credibility of his testimony. It does not seem reasonable to us the assertion that a witness who suffers an attack of hysteria while testifying may merit greater credibility than a normal witness. On the other hand, it was the counsel for the defense who, in addressing the magistrate requesting to have the witness examined, made known to the jury that the witness suffered from shock, according to his belief.

Considering the record as a whole, we are of the opinion that if the error assigned had been incurred, the same does not warrant the reversal of the judgment.

On account of another incident the defense requested, also without success, the discharge of the jury. The defense was confronting the minor with a sworn statement given before the prosecuting attorney and was asking him to explain why in the sworn statement he had said that after the events occurred he had talked with appellant, while in his testimony in court he had testified to the contrary. The witness explained that he must have been mistaken because appellant "threatened him before."

The defense, the prosecuting attorney, and the judge requested the witness, in a series of questions, to explain what he wanted to say with "before." It was then that a juror intervened:

"Mr. Bird

Q. In order to help you answer that question. When you said 'before,' did you mean that he threatened you before you talked to the prosecuting attorney?

A. Yes."

On the ground of this question the defense concludes that the gentleman from the jury had reached a conclusion as to one of the facts, for which reason the defendant would not have the benefit of an impartial trial.

One of the many suggestive questions made to the witness is involved. The judge ordered its elimination and stated that he would charge the jury in the sense that they should not take into consideration in any manner the juror's question as a conclusion, but simply as a question made in a subtle manner. At the defense's request the magistrate did not inform the jury about his request to discharge the jury. The judge also stated to the defense counsel that he could request a special instruction at the right moment concerning the question made by the juror. The defense did not do so, even though the judge requested special instructions from the parties.

This incident did not deprive appellant of an impartial trial, as he alleges, and therefore, the error assigned was not committed.

Appellant also maintains that he did not have a just and impartial trial because the prejudiced minor's testimony was not spontaneous. It suffices to say that some of the so-called suggestive questions made by the prosecuting attorney during the direct examination were not objected to, and those which were objected to, the objection did not lie.

■ In the fifth error it is assigned that the testimony of the nurse Ada Nelly Rivera Oquendo contains hearsay evidence prejudicial to appellant. It was not committed.

This witness did not testify what the minor had told her. The objections in the sense that a question was suggestive

and that the answer to another was not responsive, as well as that the witness testified about what had happened or about what had happened to the minor, were decided in favor of appellant.

■ In the sixth error the instructions to the jury are attacked. We agree with the Solicitor General in that the same are sufficient and correct.

". . . The judge instructed the jury about the essential element of the crime charged; under what circumstances the active agent as well as the passive agent may be accused when the offense charge is committed, and therefore, become co-authors (accomplices). He also indicated, under what circumstances one of these agents is not an accomplice to the act, and therefore, his testimony needs not be corroborated; when is it that he could be considered an accomplice, and in that case, what evidence would the law demand besides the testimony of that accomplice, in order to corroborate his testimony; that they (the jury) had to decide and determine, as a question of fact, whether the prejudiced witness was over or under 18 years of age. The trial judge stated that the evidence which the jury had for its consideration was in the sense that the victim was 15 years old, and immediately charged them again that they (the jury) would determine, by the weighing of the witness' testimony, whether he was over or under 18 years of age.

"The judge did not invade at any time the jury's function of determining the age of the victim. What the judge did was to summarize the sole evidence which the trier of the facts had before himself about the victim's age. It was incumbent upon appellant to introduce evidence to the contrary to rebut this fact. He did not do it. The fact about the victim's age was not in dispute.

"Defendant's counsel were satisfied with the instructions transmitted, since they did not object to them, nor requested that they be amended, nor that additional instructions be transmitted.

"Appellant in his brief reaches the conclusion that the alleged facts took place with the consent of the victim. He grounds his determination on several of his conclusions. The jury, evidently, did not reach the same conclusions and it was incumbent upon

the latter to weigh the evidence and to settle any possible conflict in the same." (Solicitor General's Report, pp. 15 and 16.)

■ Neither did the trial court err in not charging instructions about attempt to commit crime against nature. Aside from the fact that appellant did not object to the instructions transmitted nor requested an instruction on the offense of attempt to commit crime against nature, *People* v. *Rodríguez Correa*, 88 P.R.R. 635 (1963), the evidence did not justify it. *People* v. *Domenech Meléndez, ante*, p. 63.

Finally, the judgment does not constitute a cruel or unusual punishment nor lacks sufficient fluctuation margin, for which reason the eighth and last error assigned was not committed.

The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández and Mr. Justice Santana Becerra did not participate herein.